April 11, 2005

*BY HAND and ECF*

Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007-1312

        *Re:*    *United States v. Louis Filippelli and Frank D'Agostino*, et al.,
              **05 Cr. 228 (AHK)**

Dear Judge Hellerstein:

      In anticipation of our appearance scheduled for April 12, 2005, we respectfully submit this letter in opposition to the government's assertion that a single actual conflict exists which precludes undersigned counsel from representing both Louis Filippelli and Frank D'Agostino in the above-referenced case. The setting for this letter is clear. There is only one claimed actual conflict suggested by the government - that these two defendants, Filippelli and D'Agostino, may, at some point in the future, ultimately be tried together at a single trial.

      We respectfully submit that the chances of such a joint trial are extremely remote and thus the potential for conflict is theoretical only. Given the number of defendants indicted in this case (thirty-two), and the disparate nature of the charges against Mr. Filippelli (one among 12 RICO defendants) and D'Agostino (one among 20 non-RICO defendants), it is inconceivable that the two defendants will be brought to trial together. With respect to any other potential conflicts that may exist, the government has acknowledged that such conflicts may be waived.

**1.**    **The Legal Landscape for Sixth Amendment Conflicts**

      A defendant's Sixth Amendment right to the effective assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest. *United States v. Blount*, 291 F.3d 201, 210 (2d Cir. 2002), *citing Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 1241 (2002); *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097 (1981). The

right may be violated if the attorney has, "(1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance."[1] *Blount,* 291 F.3d at 210-211, *quoting United States v. Levy,* 25 F.3d 146, 152 (2d Cir.1994).

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz,* 283 F.3d 76, 91 (2d Cir.2002) (internal quotation omitted), *cert. denied,* 511 U.S. 1022 (1994); *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004). To violate the Sixth Amendment, an actual conflict must adversely affect the attorney's performance. *Williams*, 372 F.3d at 102-3, *citing United States v. Levy,* 25 F.3d 146, 152 (2d Cir.1994). Thus, while a defendant "'need not prove prejudice" once an actual conflict has been demonstrated, he must show "that a lapse in representation resulted from the conflict.'" *Williams*, 372 F.3d at 106, *quoting United States v. Malpiedi,* 62 F.3d 465, 469 (2d Cir.1995) (internal quotation marks omitted); *see Armienti v. United States,* 313 F.3d 807, 811 (2d Cir.2002).

A defendant can prove a lapse in representation by demonstrating "that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id., quoting Levy,* 25 F.3d at 157 (internal quotation marks omitted); *United States v. Eisemann*, 2005 WL 567331 * 3 (2d Cir. March 11, 2005) (same). In requiring that the alternative strategy not pursued at trial was merely "plausible," the law does not require defendant to show that the strategy was necessarily a "reasonable" one. *Eisemann*, 2005 WL 567331 * 3, *citing United States v. Feyrer,* 333 F.3d 110, 118 (2d Cir.2003). Moreover, "with respect to the substance of the plausible alternative strategy, the defendant need not show that the defense would necessarily have been successful had it been used, only that 'it possessed sufficient substance to be a viable alternative.'" *Id., quoting Feyrer,* 333 F.3d at 116 (*quoting Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir. 1993)).

> The test is a strict one because a defendant has a right to an
> attorney who can make strategic and tactical choices free from any
> conflict of interest. An attorney who is prevented from pursuing a
> strategy or tactic because of the canons of ethics is hardly an

---

[1] The case law recognizes, additionally, a third category of conflicts that are so severe that they are deemed *per se* violations of the Sixth Amendment. Such violations are unwaivable and do not require a showing that the defendant was prejudiced by his representation. *See United States v. Fulton,* 5 F.3d 605, 611 (2d Cir.1993); *United States v. John Doe No. 1,* 272 F.3d 116, 125 (2d Cir. 2001), *cert. denied,* 537 U.S. 851 (2002); *Armienti v. United States,* 234 F.3d 820, 823 (2d Cir. 2000).

>objective judge of whether that strategy or tactic is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation.

*Williams*, 372 F.3d at 106, *quoting Malpiedi,* 62 F.3d at 469 (internal quotation marks omitted).

In contrast to an actual conflict, a client's representation suffers from a *potential* conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *Williams*, 372 F.3d at 102*., quoting United States v. Kliti,* 156 F.3d 150, 153 n. 3 (2d Cir.1998). To violate the Sixth Amendment, potential conflicts must result in prejudice to the defendant. *Id., citing Levy,* 25 F.3d at 152.

Once advised of a potential or actual conflict, the district court must make an inquiry and, where possible, permit the defendant to waive the conflict in order to keep the counsel of his choice. *See Williams*, 372 F.3d at 108 (district court "is obligated to conduct an inquiry into a potential conflict of interest when 'sufficiently apprised of even the possibility' that a conflict of interest may exist"), *quoting United States v. O'Neil,* 118 F.3d 65, 72 (2d Cir. 1997). Failure to make such an inquiry has been held to be *per se* reversible error. *Williams*, 372 F.3d at 108*; see United States v. Stantini,* 85 F.3d 9, 13 (2d Cir.), *cert. denied,* 519 U.S. 1000 (1996). "To ensure that a defendant's choice is knowingly and intelligently exercised, the district court, after learning of the possibility of a conflict of interest, determines whether the attorney has an actual conflict, a potential conflict, or no conflict at all." *Id.* (citation omitted)

If the court discovers no genuine conflict, it has no further obligation. *Id., quoting United States v. Perez,* 325 F.3d 115 (2d Cir. 2003) However, the court cannot permit the representation to go forward if "the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation." *Schwarz,* 283 F.3d at 95; *see United States v. Lussier,* 71 F.3d 456, 461 (2d Cir.1995)(after conducting inquiry, court will not permit client to enter a waiver, and will disqualify counsel, if "significant actual conflicts arise during a criminal representation, and no rational defendant would knowingly and intelligently waive such a barrier to his right to effective assistance of counsel"). In such circumstances, "the actual or potential conflict cannot be waived." *Williams*, 372 F.3d at 108, *citing Schwarz*, 283 F.3d at 95. "The Sixth Amendment right to counsel is not absolute; although a defendant's choice of counsel is presumptively favored, a determination of disqualification by the court will be sustained where the court, in its sound discretion, finds either an actual conflict or a serious potential for conflict." *United States v. Muflahi* 317 F. Supp.2d 208, 211 (W.D.N.Y. 2003), *quoting Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692 (1988).

In an application to disqualify counsel for an actual or serious potential conflict, the movant bears the burden to make a sufficient showing that an attorney should be disqualified. "[T]he government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification in the particular circumstances of the case." *Muflahi,*

317 F. Supp.2d at 211, *citing United States v. Phillips,* 699 F.2d 798, 801- 02 (6th Cir.1983) ("The prosecution has no right to deny a defendant in a criminal case representation by counsel of his choice in the absence of a showing that some important interest will be adversely affected by permitting chosen counsel to proceed"), *overruled on other grounds, United States v. Tosh,* 733 F.2d 422 (6th Cir.1984); *Sauer v. Xerox Corp.,* 85 F. Supp.2d 198, 199 (W.D.N.Y.2000) ("The burden is on the movant to demonstrate that an attorney should be disqualified."). Even if the conflict has not occurred but is merely potential, the court may in its discretion disqualify counsel based on its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Muflahi,* 317 F. Supp.2d at 212-213, *quoting Wheat,* 486 U.S. at 160, 108 S.Ct. 1692.

"In most cases when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice." *Schwarz,* 283 F.3d at 95. "To preserve the protection of the Bill of Rights for hard-pressed defendants," the courts should "indulge every reasonable presumption against the waiver of fundamental rights." *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457 (1942); *see also Wheat,* 486 U.S. 153, 162, 108 S.Ct. 1692 (*citing Glasser*). In circumstances where defendants are permitted to waive conflicts with counsel, the waiver "will be honored if it is knowing and intelligent." *United States v. Blau,* 159 F.3d 68, 74 (2d Cir.1998). If, the conflict is susceptible to a waiver, then the court must follow the requirements of *Curcio*, which the Second Circuit has summarized as follows:

> *Curcio* requires the district court to (i) advise the defendant of the dangers arising from the particular conflict and ascertain that he or she understands the risks involved, (ii) encourage the defendant to seek advice from independent counsel and provide time to digest and contemplate the risks, and (iii) secure a knowing waiver of the right to conflict-free counsel before proceeding.

*United States v. Iorizzo,* 786 F.2d 52, 59 (2d Cir.1986), *citing United States v. Curcio,* 680 F.2d 881, 888-90 (2d Cir. 1982).

2.  **Applying the Legal Landscape to the Dual Representation Implicated Here**

    **A. The Issue of the Possibility of an Actual Conflict**

In this case, undersigned counsel seek to represent Louis Filippelli as well as Frank D'Agostino, both presently charged in a single indictment before this Court. Louis Filippelli is charged with eleven other defendants – but not Frank D'Agostino – with RICO and RICO conspiracy. (Counts One and Two, respectively). The indictment alleges that he committed four Hobbs Act violations including the alleged extortion of a New Jersey trucking company believed to be owned by Frank D'Agostino. (This gives rise to a potential conflict which the government

has acknowledged is waivable and which we discuss below.) He is also charged with running an illegal gambling business. Each of these offenses is charged as a racketeering act as well as a substantive offense.

Frank D'Agostino is not charged in the RICO counts. Rather, he is near the bottom of the indictment (in which the defendants are not listed alphabetically), in two counts which allege that he and others (not Filippelli), extorted an individual (Victim #1), and conspired to do so, between June 2003 and March 2005 (Counts 10 and 11). As noted above, the only actual conflict alleged is the possibility (only a theoretical possibility in our view), that these two defendants may ultimately be tried together. As we show here, this remote possibility is hardly grounds for disqualification.

While potential or actual conflicts may be rooted in the dual representation of defendants in different court proceedings, "dual representation, standing alone, does not suffice to demonstrate an actual conflict." *Blau*, 159 F.3d at 75, *citing Cuyler*, 446 U.S. at 346-49, 100 S.Ct. 1708; *United States v. Muflahi*, 317 F. Supp.2d at 211 (same); *see Mickens*, 535 U.S.162, 122 S.Ct. at 1240, 1245 (conflict may be rooted in attorney's prior representation of person whose interests are antagonistic to those of present client); *Eisemann*, 2005 WL 567331 *3. As discussed above, potential and actual conflicts give rise to the court's obligation to inquire about the circumstances of the conflict and obtain appropriate waivers from the client. However, the mere fact of dual representation does not, in itself even trigger this duty to inquire. *Cuyler*, 446 U.S. at 346-48, 100 S.Ct. at 1717-18 (multiple representation at separate trials did not trigger duty to inquire where there appeared to be no conflicting defense strategies); *United States v. Stantini*, 85 F.3d at 14 ("Dual representation in separate but related proceedings, without more, does not trigger the inquiry obligation"); *Aiello*, 814 F.2d 109, 112-113 (2d Cir. 1987) (no duty to inquire attached when trial judge was aware of dual representation in separate proceedings and there was no indication of divergent interests or defenses).

Here, there is practically no chance that Messrs. Filippelli and D'Agostino will be tried together. At bar is a 32-defendant case divided unevenly between twelve RICO defendants and twenty non-RICO defendants. Not only are Messrs. D'Agostino and Filippelli on opposite sides of this fundamental divide, but they are on opposite ends of the caption, with Frank D'Agostino holding court at the very bottom, a full page below Louis Filippelli. As noted, the government did not list the defendants alphabetically, giving at least some indication of their view of relative involvement.

Current Second Circuit law restricts joint trials to generally no more than 10 defendants. *United States v. Casamento*, 887 F. 2d 1141, 1149-1153 (2d Cir. 1989) For the possibility of a joint trial with Filippelli and D'Agostino to even exist, as many as 22 defendants would have to plead guilty prior to trial - leaving 10 defendants including Fillippelli and D'Agostino. The notion that if 3 or more RICO defendants pled guilty, the government could advance Mr. D'Agostino over numerous other non-RICO defendants with more charges and

greater connections to the RICO charges so as to place him alongside the RICO defendants for trial can be readily discarded. Conflicts cannot be manufactured by the government in order to deny a defendant counsel of choice.

Moreover, a joint trial with Mr. Filippelli and Mr. D'Agostino is simply precluded by due process and Rule 14 of the Federal Rules of Criminal Procedure. Mr. Filippelli is charged in RICO counts, which means that the government will be offering proof of the following elements against the RICO defendants: the existence of the charged "enterprise"; that each RICO defendant "participated in the affairs of the enterprise"; that each RICO defendant committed the charged predicate acts; and that those predicate acts constituted a "pattern of racketeering" as those terms are defined by Supreme Court and Second Circuit precedent.

In this connection, the government has stated that there are approximately 5,000 hours of tape recorded conversations and large amounts of documentary evidence. Undoubtedly, the government will seek to admit significant portions of this evidence against the RICO defendants in order, they will argue, to prove the RICO elements outlined above. Given even modest success with such an application, the RICO trial will be long. Playing even 500 hours of tapes, one tenth of those recorded, will result in a trial many months in duration.

Practically none of this evidence will be admissible in a trial of Mr. D'Agostino. He is charged only in counts 10 and 11 - one substantive and one conspiracy count arising out of a single transaction. A trial of Mr. D'Agostino alone, or even with other, similarly situated non-RICO defendants, would last weeks. Since the government cannot proceed to trial with the entirety of captioned defendants, *see Casamento*, a split will be made somewhere. It is inevitable and, for Rule 14 and improper prejudice reasons, necessary, that these two defendants will find themselves in different groups scheduled for separate trials before this Court. Therefore, since there is no actual risk that the defendants will proceed to trial, the government's concern is purely theoretical.[2]

### B. The Waivable Conflicts Issues

There are two potential conflicts which the government agrees are waivable. The first is that since Mr. D'Agostino is alleged to be an extortion victim of Mr. Filippelli, Mr. Filippelli is entitled to an attorney who will attempt to obtain Mr. D'Agostino's testimony at trial. Likewise, Mr. D'Agostino is entitled to attorney who will properly advise him in this regard.

Messrs. Filippelli and D'Agostino are prepared to waive this potential conflict. In addition, the Court should be aware that this conflict is "potential" in name only. The practical

---

[2] Of course, it is also true that one or both defendants may decide to resolve the matter with a plea. In that event, the current very remote possibility of conflict would be extinguished.

reality is that given the nature of the charges against Mr. D'Agostino, any lawyer representing him would advise him to assert his fifth amendment rights rendering him unavailable to Mr. Filippelli. *See Eisemann v. Herbert,* 2005 WL 567331 (2d Cir. March 11, 2005).

The second conflict which the government agrees is waivable is that, as in any multi-defendant case, each defendant is entitled to be advised of the option of cooperation. This is a common potential conflict in multi-defendant cases and Messrs. Filippelli and D'Agostino are prepared to waive this potential conflict.

For all of these reasons, the Court should find that no actual conflict exists. The Court may wish to obtain *Curcio* waivers from both defendants with respect to the two potential, waivable conflicts.

Thank you for your consideration in this matter.

Respectfully yours,

/s/

Ronald P. Fischetti

cc: Christopher Conniff, Esq. (via telefax and ECF)
Edward O'Callahan, Esq.
Assistant United States Attorneys
Southern District of New York
One St. Andrew's Plaza
New York, N.Y. 10007-1312

Clerk of the Court